**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| BLOOMDALE, S.A. and GOTRA LIMITED | |
| Plaintiffs, | CIVIL NO.: 19-cv-02093 (WGY) |
| v. | RE: BREACH OF CONTRACT, DAMAGES, TORTIOUS INTERFERENCE WITH |
| BANCRÉDITO INTERNATIONAL BANK AND TRUST CORPORATION and JULIO HERRERA VELUTINI | CONTRACTUAL RELATIONS |
| Defendants. | |

**BIBTC'S MOTION TO DISMISS**

TO THE HONORABLE COURT:

COMES NOW Defendant Bancrédito International Bank and Trust Corporation ("BIBTC"), through the undersigned counsel, and very respectfully requests that the Court dismiss the claims against it for the reasons discussed herein.

**I.    PRELIMINARY STATEMENT**

The plaintiffs in this case are two foreign corporations, Bloomdale, S.A. ("Bloomdale") and Gotra Limited ("Gotra"), (jointly, "Plaintiffs"), who invoke this Court's diversity jurisdiction as means to assert claims against BIBTC for alleged breach of contract and damages under Puerto Rico law. In addition, as to the President of BIBTC's Board of Directors, Mr. Julio Herrera Velutini ("Herrera"), Plaintiffs raise a cause of action for tortious interference with contractual relations under Puerto Rico law. See Complaint (Dkt. 1), ¶¶ 1-2.

In a nutshell, the Complaint is based on the contention that in May 2015 Bloomdale and BIBTC supposedly entered into a contract whereby Bloomdale deposited certain funds in one of BIBTC's accounts for a short period of time in exchange for a 4% fee. See Complaint (Dkt. 1), ¶¶ 20, 25, 27. Plaintiffs claim that under the alleged contract, the funds deposited in BIBTC were to be ultimately transferred to Gotra, an entity under alleged common ownership with Bloomdale. Id. ¶ 21. Plaintiffs allege that more than four (4) years after the funds were deposited as per the

alleged contract, BIBTC has yet to comply with its contractual obligations. Id. ¶ 101.

Contrary to Plaintiffs' unfounded allegations, the **only valid and enforceable agreement** regarding the funds in question is a *Foreign Currency Forward Master Agreement* (the "Master Agreement"), dated May 25, 2015, which was executed by and between Gotra and non-party Bancrédito Financial Group Trust & Company d/b/a Bancrédito Trust (UK). See Exhibit A, Unsworn Declaration Under Penalty of Perjury in Support of BIBTC's Motion to Dismiss ("the UK Trust Declaration")[1], ¶ 6; Dkt. 1-9, Master Agreement, Exhibit 9 to the Complaint.

Bancrédito Financial Group Trust & Company d/b/a Bancrédito Trust (UK), is a trust-fund organized and existing under the laws of the Island of Jersey, United Kingdom, which is separate and has legal personality distinct from BIBTC, (herein after, the "UK Trust"). See Exhibit A hereto, ¶¶ 2, 5. (The UK Trust has also conducted business as Bancrédito Trust and Company, id., ¶ 3.), Exhibit B hereto - Deed of Trust, Exhibit C hereto, ¶ 5 Unsworn Declaration Under Penalty of Perjury of Mrs. Frances M. Díaz Fossé, President and Chief Executive Officer of BIBTC ("Unsworn Declaration of BIBTC"). The wire transfers and confirmations attached as exhibits to the Complaint evince that the agreement concerning the deposit of funds was solely between Gotra and the UK Trust. See Dkt. 1-1, Exhibit 1 to the Complaint (showing the UK Trust's accounts wherein the funds object of the Complaint were deposited); Dkt. 1-2, Exhibit 2 (communications alluding to a Forex Transaction with the UK Trust); Dkt. 1-4, Exhibit 4 (statement from Gotra's account showing receipts of funds by the UK Trust); and Dkt.1-9, Exhibit 9 (showing Gotra and the UK Trust as the only contracting parties). The Master Agreement clearly and unambiguously states that: (i) it is the sole and entire agreement between the parties as to the matters contained therein (Sec. 5.9), and (ii) its terms and conditions could not be modified or amended by Gotra without the authorized signature of a UK Trust representative (Sec. 11.2). See Dkt. 1-9. Given the

---

[1] The Master Agreement included as Dkt. 1-9, Exhibit 9 to the Complaint has the same terms and conditions as the Master Agreement attached as Exhibit 1 to the UK Trust Declaration, as they are both counterparts, each of which is an original and both of which constitute the agreement between Gotra and the UK Trust, as provided by Section 5.6 of the Master Agreement.

existence of the Master Agreement and its terms, the Complaint has failed to state a viable claim against BIBTC for breach of contract. Simply put, BIBTC is not a party to the Master Agreement and the funds in question are not in its possession.

Furthermore, the allegations in the Complaint and the remedies requested therein show that the UK Trust is a necessary and indispensable party, and the real party in interest as to the purported breach of contract claim concerning the funds it holds in its accounts pursuant to the Master Agreement. In order to grant the remedy requested by Plaintiffs in the Complaint, this Court would have to pass judgment on the validity of the Master Agreement and its terms and conditions. Also, the Court would have to order non-party the UK Trust to hand over the funds it currently holds under the terms and conditions of the Master Agreement. Those remedies cannot be granted in the UK Trust's absence. The UK Trust is a necessary party, as it is the only entity that could legally be held liable in connection with any alleged breach of contract regarding the funds object of this suit. However, because the UK Trust is a foreign citizen, it cannot be joined as a defendant because complete diversity does not exist where there are foreign citizens on both sides of the litigation.[2] Thus, the Complaint must be dismissed for failure to join an indispensable party. BIBTC is not a real party in interest to this action, and its inclusion was solely meant to manufacture diversity jurisdiction where there is none.

Additionally, the Complaint is an improper attempt to have this Court pass judgment and alter, amend and/or nullify the clear and unambiguous terms of the Master Agreement in the absence of one of the contracting parties, i.e., the UK Trust. Plaintiffs' unfounded claim of a purported agreement between BIBTC and Bloomdale regarding the funds in question is factually and legally incompatible with the Master Agreement executed between Gotra and the UK Trust. The Master Agreement and the purported agreement between Bloomdale and BIBTC **cannot coexist**. If the Master Agreement is valid, then it governs the disposition of the funds object of the

---

[2] As will be further discussed below, co-defendant Herrera is also a foreign citizen or subject and his joinder destroys complete diversity.

Complaint and Plaintiffs cannot have a breach of contract claim against BIBTC for alleged failure to return the funds. Such a cause of action could only be maintained against the UK Trust. This Court cannot alter, modify and/or annul the Master Agreement in the UK Trust's absence. As a result, the Complaint should be dismissed as the Court would not be able to fashion a complete remedy in the UK Trust's absence. Regardless, it would be futile to allow Plaintiffs to amend the Complaint to attempt to bring the UK Trust as a co-defendant because: (i) diversity jurisdiction is lacking, as there are citizens of foreign states on both sides of the litigation;[3] and (ii) any claim to annul the Master Agreement is time barred.

Finally, in the alternative, the case should be dismissed under the doctrine of *forum non conveniens* as there are alternative forums in which the adjudication of this case would be more suitable.

For the above reasons, judgment should be entered dismissing the Complaint in its entirety.

## II.      STANDARD OF REVIEW AND APPLICABLE LAW

### A.  Motions under Fed.R.Civ.P. 12(b)(6)

Pursuant to Fed.R.Civ.P. 12(b)(6), a defendant may request dismissal of a complaint for failure to state a claim upon which relief may be granted. When a complaint is challenged under this rule, the court construes the pleading liberally in the pleader's favor. See, e.g., *Kaltenbach v. Ricards*, 464 F.3d 524, 526-27 (5th Cir. 2006). When assessing whether a plaintiff's complaint provides "fair notice to the defendants" and states "a facially plausible legal claim," the Court must utilize a two-pronged approach. *See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 11-12 (1st Cir. 2011)*. *First*, the Court can disregard statements that "offer legal conclusions couched as fact," because the plaintiff must do more than "parrot the elements of the cause of action." Id. at 12.

---

[3] As discussed in Herrera's Motion to Dismiss, said co-defendant is a citizen of the United Kingdom for diversity purposes. The statements and arguments set forth in Herrera's Motion to Dismiss, as well as the exhibits attached thereto are hereby adopted and incorporated by reference to this motion under Fed. R. of Civ. P. 10 (c).

*Second*, the Court is bound to treat all "properly pled factual allegations" as true and draw all reasonable inferences in the plaintiff's favor. Id.

The allegations contained in a complaint are viewed through the prism of Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Rule 8 exists to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While encouraging brevity, however, the federal pleading duty is far from trivial. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (Rule 8 still "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); see also *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996) (the pleading requirement is real and "not entirely a toothless tiger"). To comply with Rule 8, the factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). Complaints that offer "labels," "conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" fail to rise above the speculative level. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Consequently, to survive a motion to dismiss, a complaint must allege factual matters that state a "claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).

### B.  Motions under Fed.R.Civ.P. 12(b)(7)

Pursuant to Fed. R. Civ. P. 12(b)(7) a party may assert a defense of failure to join a party under Fed. R. Civ. P. 19 by motion. "Generally, a Rule 12(b)(7) motion should be granted when there is an absent party without whom complete relief will not be possible or whose interest in the controversy is such that to proceed without this party might prejudice it or the parties already present in the case." *Rivera Rojas v. Loewen Group Intern., Inc.*, 178 F.R.D. 356 (D. PR 1998).

Before dismissing a case pursuant to Rule 12(b)(7), a court is required to follow a two-prong analysis. *USA v. San Juan Bay Marina*, 239 F.3d 400, 405 (1st Cir. 2001). The court needs

to determine "whether a person fits the definition of those who should 'be joined if feasible' under Rule 19(a)." <u>See</u> *Pujol v. Shearson Marican Exp., Inc.*, 877 F.2d. 132, 134 (1st Cir. 1989); *Montes-Santiago v. State Ins. Fund. Corp.*, 600 F.Supp.2d 339, 342 (D. PR 2009). Rule 19(a) requires that a party be joined if:

> (A)  in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)  that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i)  as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii)  leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

<u>See</u> Fed. R. Civ. P. 19(a).

If the party is "necessary", meaning it fits the definition provided by Rule 19(a), but joinder is not feasible, the court must proceed to the second step. "It must decide, using four factors, whether in 'equity and good conscience the action should proceed among the parties before it, or should be dismissed.'" *Pujol,* 877 F.2d. at 134. This analysis relates to whether the party is indispensable. To that effect, Rule 19(b) states that the factors courts should consider in this analysis include:

> (1)  the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2)  the extent to which any prejudice could be lessened or avoided by:
>
> > (A)  protective provisions in the judgment;
> >
> > (B)  shaping the relief; or
> >
> > (C)  other measures;
>
> (3)  whether a judgment rendered in the person's absence would be adequate; and
>
> (4)  whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

<u>See</u> Fed. R. Civ. P. 19(b).

6

The First Circuit has held that Rule 19 furthers numerous related policies, including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete relief in a single action, and the interest of absentees in avoiding prejudice. *Acton Co., Inc. of Massachusetts v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir. 1982); See also Notes of Advisory Committee on Rule 19 ("persons materially interested in the subject of an action... should be joined as parties so that they may be heard and a complete disposition made. When this comprehensive joinder cannot be accomplished... the case should be examined pragmatically and a choice made" between proceeding in their absence and dismissing the case.")

The moving party bears the burden of proof as to both parts of the analysis. *Generadora de Electricidad del Caribe, Inc. v. Foster Wheeler Corp.*, 92 F. Supp.2d 8, 14 (D. PR 2000). To meet this burden, the movant may submit affidavits or other relevant evidence. *Rivera Rojas*,178 F.R.D at 360 *citing Sunrise Financial, Inc. v. Painwebber, Inc.*, 948 F.Supp. 1002, 1006 (D. Utah 1996). Thus, a court ruling on a 12(b)(7) motion may consider evidence outside the pleadings. See *Albahary v. City of Bristol*, 963 F.Supp. 150, 156 n.2 (D. Conn. 1997).

In breach of contract actions "seeking specific performance of a contract, **all persons who will be required to act to carry out a court order compelling performance have been held to be indispensable parties**." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane*, Federal Practice & Procedure* § 1613, at 196 (3rd ed. 2001) (emphasis ours). See also *Acton, Co., Inc., of Massachusetts v. Bachman Foods, Inc.*, 668 F.2d 76, 78-79 (1st Cir. 1982); *E & E Inv., Inc. v. Simmons Co.*, 169 F.R.D. 467, 471-72 (D. PR 1996); *F & M Distributors v. Am. Hardware Supply*, 129 F.R.D. 494, 497-98 (W.D. Pa 1990); *Blacksmith Invs., LLC v. Cives Steel Co.*, 228 F.R.D. 66 (D. Mass 2005); *Apple iPhone 3G and 3GS MMS Marketing and Sales Practice Litigation*, 864 F.Supp 2d 451, 456 (E.D. La 2012), *First State Life Ins. Investors, Inc. v. 20th Century Corp.*, 309 F.Supp. 1390, 1392 (D. Del. 1969); *Capshaw v. Smith Estates, Inc.*, 69 F.R.D. 598 (D. Del. 1976); *H.D. Corp. of Puerto Rico v. Ford Motor Co.,* 791 F.2d 987 (1st Cir. 1986); Lebron v. MBTI, Inc.*,*

1988 WL 114575 (D. PR 1988);  *Heinsohn v. Levin,* 79 F.R.D. 441 (D. Mass. 1978).

### C.  Motions under Fed.R.Civ.P.12(b)(1)

"As courts of limited jurisdiction, federal courts have the duty to construe their jurisdictional grants narrowly." *Fina Air, Inc. v. United States*, 555 F.Supp.2d 321, 323 (D. PR 2008). In considering motions to dismiss, ordinarily, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa v. United States*, 99 F. F. 3d 1200, 12 10 (1st Cir. 1996). "However, the burden of proving that subject matter jurisdiction exists does not fall on the defendant, but on the plaintiff." *Fernández Molinary v. Industrias La Famosa, Inc.*, 203 F. Supp. 2d 111, 114 (D. PR 2002) *citing Aversa*, 99 F.3d at 1209. Hence, when confronted with a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), argumentative inferences favorable to the pleader should not be drawn." *Menéndez v. United States*, 67 F. Supp, 2d 42, 45 (D.P.R. 1999).

### D.  Motions under the doctrine of *forum non conveniens*

The decision to grant or deny a motion to dismiss for *forum non conveniens* is generally committed to the district court's discretion. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981); <u>See also</u> *Howe v. Goldcorp Invs., Ltd.*, 946 F.2d 944, 950 (1st Cir. 1991) (*forum non conveniens* is intended to "avoid trials in places so 'inconvenient' that transfer is needed to avoid serious unfairness"). To prevail, the moving party must show that: "(1) there is an adequate alternative forum, and (2) that considerations of convenience and judicial efficiency strongly favor litigating the claim in the second forum." *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 423-24 (1st Cir. 1991). The party moving for dismissal bears the burden of proof of establishing than an adequate alternative forum exists and that "consideration[s] of convenience and judicial efficiency strongly favor litigating the claim in the second forum." *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000)(*citing Piper Aircraft,* 454 U.S. at 254 n. 22.

III.     **ARGUMENTS IN SUPPORT OF DISMISSAL**

A.  **The Complaint should be dismissed under Fed. R. Civ. P. 12 (b)(6) because it fails to state a viable claim against BIBTC upon which relief can be granted.**

Plaintiffs contend that they have been damaged due to BIBTC's purported breach of contract. Dkt. 1, ¶ 98. Also, as a result of said purported breach, they are claiming damages against BIBTC. Id., ¶ 99.

It is well settled that contracts regulate only relations between the contracting parties and, as such, are immaterial with respect to third parties. See *Dennis, Metro Invs. v. City Fed. Savs.*, 121 P.R. Dec. 197 (1988), 21 P.R. Offic. Trans. 186 (1988). In the absence of an existing contractual obligation, a party cannot be sued for breach of contract or contract damages. See *Suárez v. Hernández*, 56 P.R.R. 262, 268 (1956) ("Actions *ex contractu* — like the one sought to be prosecuted in the instant case — can only be prosecuted by either party to the contract against the other."). Apart from Plaintiffs' conclusory allegations, the Complaint does not give rise to a plausible cause of action for breach of contract against BIBTC, and the allegations therein as to the purported existence of an agreement with BIBTC are nothing more than pure speculation.

BIBTC is an international banking entity. Dkt. 1, ¶ 4. Bloomdale is a corporation organized under the laws of Panama. Dkt. 1, ¶ 1. Pursuant to public information and documents in Panama's Public Registry, Bloomdale is a commercial corporation created in 2004, and engaged in commercial dealings. See Exhibit D hereto, Deed No. 283 dated January 9, 2014 filed by Bloomdale, S.A. before the Panama Public Registry.

Article 82 of the Puerto Rico Commerce Code, provides that:

> "Commercial contracts shall be valid and shall cause obligations and causes of action whatever may be the form and language in which they are executed ... **provided their existence is shown by any of the means provided by civil law. However, the testimony of witnesses shall not in itself be sufficient to prove the existence of a contract the amount of which exceeds three hundred dollars, unless such testimony concurs with other evidence**." P.R. Laws Ann. tit. 10, § 1302 (emphasis added).

"[T]his article is based on the legislators' distrust of testimonial evidence in commercial

contracts." *Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.*, 954 F.Supp. 438, 449 (1996) "By requiring non-testimonial evidence of the existence of a commercial contract, this article attempts to foster security in commercial transactions by promoting the use of more formal instruments." Id. *citing Vila & Hnos. Inc. v. Owens Ill. de P.R.*, 117 P.R. Dec. 825, 833 (1986). Art. 82 applies only to commercial contracts. Failure to comply with its requirements may render the contract unenforceable not only as to third parties, but also as to the original parties to the contract. Id.

Pursuant to Article 2 of the Commerce Code of Puerto Rico, "[c]ommercial transactions, be they consummated by merchants or not, whether they are specified in this Code or not[,] shall be governed by the provisions contained in the same.... Commercial transactions shall be considered those enumerated in this Code and any others of a similar character." *Garita Hotel*, 954 F.Supp. at 452 (1996) *citing* P.R. Laws Ann. tit. 10, § 1002. Under Art. 221 of the Commerce Code, a deposit may be considered commercial, if (a) the depositary,[4] at least, is a merchant, (b) the wares deposited are commercial objects, and (c) the deposit constitute in itself a commercial transaction, or is made by reason of commercial transactions. P.R. Laws Ann. Tit. 10, § 1621.

The purported deposit agreement between BIBTC and Bloomdale, if any, would be commercial in nature. *First*, international banking entities, like BIBTC, are merchants for purposes of the Puerto Rico Commerce Code. See *Garita Hotel*, 954 F.Supp. at 452 (1996) *citing* Commerce Code Art. 1, codified at P.R. Laws Ann. Tit. 10, § 1001. *Second*, Bloomdale is also a merchant pursuant to Panama's Public Registry. See Exhibit F hereto. *Third*, the wares allegedly deposited with BIBTC are commercial objects, i.e., monetary funds. *Finally*, the alleged deposit

---

[4] The English translation incorrectly refers to "depositor." However, the original Spanish version of this article specifically uses the term "depositario," i.e., the person or entity who cares for the deposited goods or the depositary in English. See Exhibit E hereto, Spanish version of P.R. Laws Ann. Tit. 10, § 1621. In any event, Bloomdale is also a merchant. See Exhibit F, Registry Information of Bloomdale, S.A. before the Panama Public Registry.

in itself constituted a commercial transaction or was made by reason of a commercial transaction. See Dkt. 1, ¶¶ 16-21.

In view of the above, the Complaint fails to assert allegations that could give rise to a viable claim for breach of contract against BIBTC in compliance with Art. 82 of the Puerto Rico Commerce Code. *First*, the purported agreement between BIBTC and Bloomdale is not in writing. *Second*, the only written agreement regarding the funds in question is the Master Agreement between the UK Trust and Gotra, which clearly and unambiguously states that: (i) it is the sole and entire agreement between the parties as to the matters contained therein (Sec. 5.9), and (ii) its terms and conditions could not be modified or amended by Gotra without the authorized signature of a UK Trust representative (Sec. 11.2). *Third*, the exhibits submitted with the Complaint do not support the existence of a purported agreement between BIBTC and Bloomdale. To the contrary, they confirm that the only agreement concerning the deposited funds is the Master Agreement. See Dkt. 1-1, Exhibit 1 to the Complaint (showing the UK Trust's accounts wherein the funds object of the Complaint were deposited); Dkt. 1-2, Exhibit 2 (communications alluding to a Forex Transaction with the UK Trust); Dkt. 1-4, Exhibit 4 (statement from Gotra's account showing receipts of funds by the UK Trust); and Dkt.1-9, Exhibit 9 (showing the Gotra and the UK Trust as the only contracting parties). See also Exhibit A, the UK Trust Declaration, stating that the Master Agreement has not been amended or modified, ¶ 7, not terminated by any of the parties to said agreement, ¶ 8. *Finally*, the Complaint and the allegations regarding the purported existence of an agreement between BIBTC and Bloomdale are not even supported by a sworn declaration. Because the allegations in the Complaint are insufficient to satisfy the requirements of Art. 82 of the Puerto Rico Commerce Code, Plaintiffs have failed to state a claim for which relief could be granted against BIBTC for breach of contract and the Complaint should be dismissed.[5]

---

[5] Even if we were to assume that the purported deposit agreement was not commercial but rather civil in nature, which BIBTC denies, it would still bring about the dismissal of the Complaint. Art. 1232 of the Civil

**B. The Complaint should be dismissed for failure to join the UK Trust which is a necessary and indispensable party.**

As discussed above, the **only valid and enforceable agreement** regarding the funds in question is the Master Agreement executed by and between Gotra and non-party the UK Trust. See Dkt. 1-9, Master Agreement, Exhibit 9 to the Complaint; see also Exhibit A, ¶¶ 6-8 (the UK Trust Declaration).  This is evinced by wire transfers and confirmations attached as exhibits to the Complaint. See Dkt. 1-1, Exhibit 1 to the Complaint; Dkt. 1-2; Dkt. 1-4, and Dkt.1-9. The UK Trust, is a trust-fund organized and existing under the laws of the Island of Jersey, United Kingdom, which is separate and has legal personality distinct from BIBTC. See Exhibit C, ¶ 5 (Unsworn Declaration of BIBTC); Exhibit A, ¶ 2 (the UK Trust Declaration).

The UK Trust is a necessary and indispensable party to this action, and the real party in interest as to the purported breach of contract claim concerning the funds held in its accounts pursuant to the Master Agreement. In order to grant the remedy requested by Plaintiffs in the Complaint, this Court would have to pass judgment on the validity of the Master Agreement and its terms and conditions. Also, the Court would have to order non-party the UK Trust to hand over the funds held in its accounts pursuant to the Master Agreement. Because those remedies cannot be granted in its absence without affecting its rights and interests, the UK Trust is a necessary party to this action. More importantly, it is the only entity that could be held liable for any alleged breach of contract concerning the funds object of this suit. BIBTC, who is an independent and separate legal entity from the UK Trust, has no contract with Plaintiffs and no control or title over any account of the UK Trust. See Exhibit G, Certificate of Existence of BIBTC issued by the

---

Code provides that "contracts in which the amount of the consideration of one or both of the two contracting parties exceeds three hundred (300) dollars, must be reduced to writing even though it be a private contract." P.R. Laws Ann. tit. 31, § 3453 (Official translation 1990). "Although a literal reading of Art. 1232 might lead one to conclude that oral contracts that exceed $300 are unenforceable in general, in fact Art. 1232 merely prevents such contracts from being enforced against third parties." *Garita Hotel*, 954 F.Supp. at 449 (1996). In this case, validating the purported agreement between BIBTC and Bloomdale and ordering the return of the funds would necessarily require that such contract be enforced against non-party the UK Trust, as it is the entity that holds - pursuant to the terms of the Master Agreement- the funds object of this suit. Such an outcome would be contrary to Puerto Rico law.

Department of State of Puerto Rico; Exhibit C, ¶¶ 5-12 (Unsworn Declaration of BIBTC). Any requested remedy concerning the funds object of this suit must be brought exclusively against the UK Trust and must be evaluated under the terms and conditions of the Master Agreement. BIBTC is not a party to the Master Agreement.

To prevail in its request to dismiss the complaint for failure to join a party under Rule 19, BIBTC must show that: (i) the UK Trust is required for this suit to proceed; (ii) the UK Trust cannot be joined; and (iii) the suit cannot proceed in equity and good conscience without the UK Trust. See Fed. R. Civ. P. 19(a) and (b); *Piccioto v. Continental Cas. Co.*, 512 F.3d 9 (1st Cir. 2008).

As to the first requirement, the First Circuit, as well as other federal courts, has held that **all parties to the contract are necessary parties in breach of contract actions,** and, therefore, are required to be joined. See *Acton, Co., Inc., of Massachusetts v. Bachman Foods, Inc.*, 668 F.2d 76, 78-79 (1st Cir. 1982); *E & E Inv., Inc. v. Simmons Co.*, 169 F.R.D. 467, 471-72 (D. PR 1996); *F & M Distributors v. Am. Hardware Supply*, 129 F.R.D. 494, 497-98 (W.D. Pa 1990); *Blacksmith Invs., LLC v. Cives Steel Co.*, 228 F.R.D. 66 (D. Mass 2005); *Apple iPhone 3G and 3GS MMS Marketing and Sales Practice Litigation*, 864 F.Supp 2d 451, 456 (E.D. La 2012) ("Where interpretation of a contract is at issue, the parties to the contract are necessary parties"); *Siemens Bldg. Techs., Inc. v. Jefferson Parish*, 2004 WL 1837386 *6 (E.D. La 2004); *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir.1984) (affirming district court's conclusion that a nonparty was an indispensable party under Rule 19(b) where it "possessed rights arising from the agreements at issue which are inextricably intertwined with issues bound to be raised in an action solely against" the named defendant).

Having established that the UK Trust must be joined, the next requirement is to determine whether it cannot be joined, and thus is considered indispensable. A party cannot be joined if, for instance, its presence would deprive the court of jurisdiction. See Fed. R. Civ. P. 19(a); *Marvel Characters, Inc. v. Kirby,* 726 F.3d 119 (2d Cir. 2013). In this case, the necessary joinder of the UK Trust would deprive the Court of jurisdiction. **There is no diversity jurisdiction because this**

**civil action includes claims between citizens or subjects of foreign states on both side of the litigation**, i.e., Plaintiff-Bloomdale – citizen of Panama and Plaintiff-Gotra– citizen of the UAE, on one side, and Necessary Party-the UK Trust and Co-defendant Herrera – both citizens of the United Kingdom, on the other. Federal district courts have "alienage" jurisdiction in actions between citizens of a State and citizens of foreign states. 28 U.S.C. § 1332(a)(2) (1994). In order to maintain an action in federal court based on "alienage" jurisdiction, there must be complete diversity of citizenship between all the plaintiffs and all the defendants. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1557 (11th Cir.1989). **Complete diversity does not exist where there are aliens on both sides of the litigation**. See *Cabalceta*, 883 F.2d at 1557 (citation omitted); *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1298 (5th Cir.1985) (citation omitted). This is so even if the aliens are from different countries. *Corporación Venezolana de Fomento v. Vintero Sales Corp.*, 477 F.Supp. 615, 617 (S.D.N.Y.1979) (citation omitted).

The final prong is to evaluate whether the suit cannot proceed in equity and good conscience without the UK Trust. This requirement is also satisfied. As discussed above, Gotra entered into a Master Agreement with the UK Trust. The Complaint is an improper attempt to have this Court pass judgment, alter and/or annul the terms of the Master Agreement. The issues relating to the terms and conditions of the Master Agreement and its validity are inextricably intertwined with Plaintiffs' claims. Plaintiffs' unfounded claim regarding the existence of a purported agreement between BIBTC and Bloomdale concerning the funds in question is both factually and legally incompatible with the terms of the Master Agreement executed between Gotra and the UK Trust. The Master Agreement and the purported agreement between Bloomdale and BIBTC **cannot coexist**. If the Master Agreement is valid, then it governs the disposition of the funds object of the Complaint and Plaintiffs cannot have a breach of contract claim against BIBTC for alleged failure to return the funds. Such a cause of action could only be filed against the UK Trust. This Court cannot modify, alter and/or annul the Master Agreement in the UK Trust's absence without severely prejudicing the UK Trust's rights and interests under the Master

Agreement. Given the remedies requested by Plaintiffs, the enforcement of a purported agreement - which is in direct conflict with the Master Agreement - and the return of funds held by the UK Trust under said Master Agreement, there is no way to lessen or avoid causing prejudice to the UK Trust by protective provisions in the judgment or shaping the relief. Simply put, there can be no adequate or complete judgment rendered in this case in the UK Trust's absence. Conversely, the foreign Plaintiffs would still have other legal forums available to redress the claim, including the United Kingdom. Thus, the Complaint should be dismissed in its entirety as the Court would not be able to fashion a complete remedy in this case without violating non-party the UK Trust's legally protected rights and interests in connection with the Master Agreement and the funds held in its accounts. See Fed. R. Civ. P. 19(a)(1)(A); *Watchtower Bible & Tract Society v. Mun. of San Juan*, 773 F.3d 1, 13 (1st Cir. 2014) ("Relief is complete when it meaningfully resolves the contested matter as between the affected parties . . .").

Finally, in breach of contract cases, contracting parties will typically be necessary and indispensable. *Travelers Indem. Co. v. Household Intern, Inc.*, 775 F.Supp. 518, 527 (D. Conn. 1991) ("the precedent supports the proposition that a contracting party is the paradigm of an indispensable party"); *Acton*, 668 F.2 at 78-79; *F&M Distributors*, 129 F.R.D. at 597-98; *E & E Inv., Inc. v. Simmons Co.*, 169 F.R.D. at 471-72; *Ward v. Deavers*, 203 F.2d 72, 75 (DC Cir. 1953) (final judgment reversed because party to a contract deemed indispensable was not joined); *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil Inc.*, 456 F.Supp. 831, 836 n.7 (D. Del 1978) (if the "rights sued upon arise from a contract, all parties to the contract must be joined); *Jacobsen v. Luckenbach Steamship Co.*, 201 F.Supp. 883, 889 (D. Or 1961) ("all parties [to a contract] are deemed indispensable and should be joined).

Accordingly, the Complaint should be dismissed for failure to join an indispensable party. The necessary joinder of the UK Trust as a defendant in this action, a foreign citizen or subject, destroy diversity jurisdiction and the case cannot proceed in its absence.

**C. The Court lacks subject-matter jurisdiction under 28 U.S.C. § 1332 to entertain the Complaint.**

Plaintiffs have brought this action under diversity and alienage jurisdiction pursuant 28 U.S.C. § 1332. Dkt. 1, ¶ 8. Alienage jurisdiction does not encompass a foreign plaintiff suing a foreign defendant. *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 711 (9th Cir. 1992); *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537-38 (5th Cir. 2014); *Jain v. De Mere*, 51 F.3d 686, 689 (7th Cir. 1995). In order to maintain an action in federal court based on "alienage" jurisdiction, there must be complete diversity of citizenship between all the plaintiffs and all the defendants. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1557 (11th Cir.1989). **Complete diversity does not exist where there are aliens on both sides of the litigation**. See *Cabalceta*, 883 F.2d at 1557 (citation omitted); *Giannakos*, 762 F.2d at 1298 (finding no diversity because "[b]oth the plaintiff and one of the defendants, Hyperion Helios Shipping Corporation, [were] citizens of foreign nations") (citation omitted). This is so even if the aliens are from different countries. *Corporación Venezolana de Fomento*, 477 F.Supp. at 617 (citations omitted).

Plaintiffs averred that they both are foreign corporations. Dkt. 1, ¶¶ 1, 2. Contrary to the allegations of the Complaint, co-defendant Herrera is a citizen of and is domiciled in the United Kingdom. See Exhibit H, Unsworn Declaration of Mr. Julio M. Herrera, ¶ 12. Further, non-party the UK Trust, an indispensable party and the real party in interest in connection with any alleged breach of contract claim regarding the funds held in its accounts, is also a foreign citizen organized under the laws of the Island of Jersey, United Kingdom. See Exhibit A, ¶ 2 (the UK Trust Declaration); and Exhibit B, Deed of Trust.

On its face, the Complaint does not satisfy the requirements of diversity jurisdiction because the diversity of citizenship is not complete. Both Plaintiffs, one of the co-defendants, Herrera, and indispensable party the UK Trust, are citizens of foreign nations. Diversity does not exist where aliens are on both sides of the litigation. *Corporación Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir.1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863,

66 L.Ed.2d 804 (1981).

Further, the required complete diversity of citizenship jurisdiction under § 1332 is tested by the citizenship of the **real parties to the controversy**. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980*); Airlines Reporting Corp. v. S&N Travel, Inc.*, 58 F.3d 857, 861-62 (2d Cir. 1995);  *Associated Ins. Mgmt. v. Arkansas Gen. Agency, Inc.*, 149 F.3d 794, 796 (8th Cir. 1998) (diversity is tested by citizenship of real parties to controversy). As discussed above, the UK Trust is the real party in interest regarding Plaintiffs' breach of contract claim and request for the return the funds held in its accounts. This further sustains that the Complaint must be dismissed for lack of jurisdiction because the UK Trust is an indispensable party and real party in interest that cannot be joined to this action without additionally destroying complete diversity.

Finally, it is worth noting that Plaintiffs included BIBTC, the only US citizen, as a defendant to try to manufacture diversity jurisdiction. Plaintiffs were well aware that BIBTC was not a party to the Master Agreement. When a party has been improperly or collusively joined to invoke jurisdiction, the court loses jurisdiction over the entire matter. See 28 U.S.C. §1359; *National Fitness Holdings, Inc. v. Grand View Corporate Ctr., LLC*, 749 F.3d 1202, 1205 (10th Cir. 2014); *Castillo Grand, LLC v. Sheraton Oper. Corp.*, 719 F.3d 120, 125 (2d Cir. 2013); *Nike, Inc. v. Comercial Ibérica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991-92 (9th Cir. 1994). "[J]urisdiction is not conferred by the stroke of a lawyer's pen…when challenged it must be adequately founded in fact." See *Abdel-Aleem v. OPK Biotech, LLC*, 665 F.3d 38, 44 (1st Cir. 2012) (emphasis added), *quoting Diefenthal v. Civil Aeronautics Bd.*, 681 F.2d 1039, 1053 (5th Cir. 1982).

Since there are foreign citizens on both sides of the litigation and there is no diversity jurisdiction over the real parties in interest in this case, the Complaint should be dismissed.

**D.  Plaintiffs' attempt to have this Court annul the Master Agreement is time-barred.**

As discussed above, the Complaint is an improper attempt to have this Court pass

judgment, alter and/or annul the terms of the Master Agreement. The issues relating to the terms and conditions of the Master Agreement and its validity are inextricably intertwined with Plaintiffs' claims. The Master Agreement and the purported agreement between Bloomdale and BIBTC **cannot coexist**. To prevail in their claim, Plaintiffs first have to annul the Master Agreement which they are unwilling to recognize. Such a claim, however, is time-barred.

Plaintiffs aver that the Master Agreement executed between Gotra and the UK Trust is not binding or applicable, as Plaintiffs' so-called beneficial owner (Mr. Jacques Lasry) allegedly felt "compelled" to execute the Master Agreement to have access to the funds. See Dkt. 1, ¶ 52.[6] An action to annul an agreement because the consent was supposedly obtained through deceit expires four years after the contract is executed. Article 1235 of the Civil Code, P.R. Ann. Tit. 31, sec. 3512. *García Lopez v. Mendez García*, 102 P.R.R. 383 (1974). See also *Millan Soto v. Caribe Motors Corp.,* 83 P.R.R. 474 (1961); *Vazquez v. Vazquez*, 15 P.R.R. 84 (1909). Articles 1221 and 1253 of the Puerto Rico Civil Code, P.R. Ann. Tit. 31 secs. 3408 and 3512, govern the types of actions and, as provided therein, "such an action cannot be brought once four years have passed since the execution of the contract. No reasonable period for discovery is given, nor will any other event toll the statute of limitations. Simply put, we are faced with a civil law caducity term (period of extinguishment) that cannot be extended." *Arrieta Giménez v. Arrieta Negrón*, 672 F.Supp. 46, 49 (D. PR,1987). See also *Lummus Company v. Commonwealth Oil Refining Co.,* 280 F.2d 915, 930–31 n. 21 (1st Cir. 1960), *cert. denied,* 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed.2d 225 (1960).

The effective date of the Master Agreement was May 25, 2015, thus the cause of action to annul said agreement would have expired on May 25, 2019. However, even taking February

---

[6] It is worth noting that none of Plaintiffs' allegations refer to a statement or a communication made by BIBTC nor Herrera themselves allegedly compelling Plaintiffs to execute the Master Agreement. See Dkt. 1, ¶¶ 51, 53, 54, 56, 58. Instead, the Complaint only refers to alleged statements and communications made by Michelle Fournari, President and CEO of Pristine Capital Group, an "independent consulting company which provides financial and banking advice," see Dkt. 1, ¶ 19, hired by Bloomdale "to assist it in exploring its options with regard to the transfer of its funds out [of] the foreign bank into a new bank." Id., ¶ 18.

11, 2016 as the date when Master Agreement was executed, see Dkt. 1, ¶ 59, any claim to annul

said contract would have expired on February 11, 2020. Accordingly, any action to annul the

Master Agreement had to be brought against the UK Trust on or before February 11, 2020, at the

latest. No such action has been brought against the UK Trust to date.  See Article 1254 of the

Civil Code, P.R. Ann. Tit. 31, sec. 3513 ("The action for nullity of contracts may be brought by

those who are principally or subsidiarily obligated by virtue thereof…"); *Franceschi, et al. v.

Sambolin et al.,* 10 D.P.R. 114 (1906); *VELCO v. Industrial Serv. Apparel.,* 143 D.P.R. 243

(1997)(those who may legitimately bring an action to nullify a contract are the principal or

subsidiary debtors).

### E.  In the alternative, the Complaint should be dismissed under the doctrine of *forum non conveniens*

In the alternative, BIBTC respectfully moves for dismissal under the doctrine of *forum non

conveniens.* There are alternative forums in the United Kingdom and the European Union, as well

as considerations of convenience and judicial efficiency, which favor litigating this case abroad.

At the outset, BIBTC contends that alternative forums exist in the U.K. and the European

Union to adjudicate the real controversy in this case. See *Piper Aircraft Co.* 454 U.S. at 262 n.

22. ("ordinarily, [the existence or an alternative forum] requirement will be satisfied when the

defendant is 'amenable to process' in the other jurisdiction"). Council Regulation (EC) 1393/2007

dated November 13, 2007 enacted by the Council of the European Union regulates service in the

member states of judicial documents in civil or commercial matters between European Union

Member states. Further, the Hague Service Convention of November 15, 1965 provides means

for parties to effect service of judicial documents in civil or commercial matters in other contracting

states. Consequently, there are alternative, adequate forums abroad to hear this breach of

contract claim.

Additionally, the balance of private and public interest factors favors litigating this dispute

abroad. With respect to private interest factors, it is evident that, pragmatically, access to

documentary evidence and witnesses would be problematic and costly if this dispute were to be heard in the U.S.

Consistent with Plaintiffs' allegations, potential witnesses to the factual allegations in this dispute would be: Mr. Jacques Lasry, Mr. Julio Herrera, Mr. Thierry Buounous, Ms. Sofía Saracho, and Ms. Michelle Fournari. See Dkt 1, ¶¶ 3, 7, 19, 86; see also Dkt. 1-7 to 1-9. With the exception of Ms. Fournari, who is, upon information and belief, a resident of the state of Florida, all other witnesses reside abroad: in Madagascar, the United Kingdom and Switzerland, respectively. Id. As the majority of the key witnesses are located in the European Union, relative ease of access to these sources of proof as well as the cost and practical burden to these witnesses in appearing before a court in the U.S., favor litigation in a forum abroad.

Public interest factors also favor litigation abroad. These factors include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in application of foreign laws; and the unfairness of burdening citizens in an unrelated forum with jury duty.

See Mercier, 935 F.2d at 424 (quoting Piper Aircraft Co., 454 U.S. at 241 n.6)

As discussed above, this is a contractual dispute where all the real parties in interest are foreign citizens residing abroad. Even if U.S. law applies, the enforcement of any judgment rendered would necessarily require the application of foreign law. Therefore, even though this Court need not decide, at this juncture, the applicable law in the present case, matters of convenience and judicial efficiency favor a foreign forum and overcome any notions of deference to Plaintiffs' chosen forum in this case.

## IV.   CONCLUSION

For all the foregoing reasons, BIBTC respectfully requests that the Complaint be dismissed in its entirety.

**WHEREFORE**, BIBTC respectfully requests, pursuant to Fed. R. Civ. P. 12(b)(1), (2), (6), and (7) that the Honorable Court enter judgment dismissing all claims against it and imposing attorneys' fees against Plaintiffs for bringing this suit.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 4th day of May, 2020.

**McConnel Valdés LLC**
*Attorneys for Bancrédito International Bank*
*and Trust Corporation*
PO Box 364225
San Juan, Puerto Rico, 00936-4225
Tel.: (787) 250-5810/5699/2630
Fax.: (787) 759-8282

*s/Henry O. Freese Souffront*
Henry O. Freese Souffront
USDC-PR No. 215502
hf@mcvpr.com

*s/Carmen M. Alfonso-Rodríguez*
Carmen M. Alfonso-Rodríguez
USDC-PR No. 225905
car@mcvpr.com

*s/Leany P. Prieto-Rodríguez*
Leany P. Prieto-Rodríguez
USDC-PR No. 303407
lpp@mcvpr.com

**CERTIFICATE OF SERVICE**

I CERTIFY that today I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

Dated: May 4, 2020.

*s/Leany P. Prieto-Rodríguez*
Leany P. Prieto-Rodríguez
USDC-PR No. 303407
lpp@mcvpr.com
